UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

AT CHARLESTON

CITY NATIONAL BANK OF WEST VIRGINIA,
a national banking association,

        Plaintiff,

v.                                    Civil Action No. 2:09-1148

MARK K. SMITH; LISA D. SMITH; UNITED
STATES DEPARTMENT OF THE TREASURY,
INTERNAL REVENUE SERVICE; UNITED
STATES DEPARTMENT OF JUSTICE; WEST
VIRGINIA DEPARTMENT OF TAX AND REVENUE;
FOUR S DEVELOPMENT LIMITED PARTNERSHIP;
LOUANN HEDRICK; JENNIFER DILLON; and
POPLAR HILLS HOMEOWNERS ASSOCIATION,

        Defendants.

MEMORANDUM OPINION AND ORDER

        Pending is the motion for summary judgment of plaintiff

City National Bank of West Virginia ("City National"), filed

September 20, 2010.

I.  Factual Background

        In this action, City National requests reformation of a

deed of trust to correct what it asserts is a "simple scrivener's

error."  (Pl.'s Mem. Supp. Mot. Summ. J. 1).  City National is a
national banking association with its principal place of business
in Kanawha County, West Virginia.  (Compl. ¶ 1).  Defendant Lisa
D. Smith ("Ms. Smith") is a resident of Putnam County.  (Id. ¶
2).  Defendant Mark K. Smith ("Mr. Smith") is a former resident
of Putnam County and the husband of Lisa Smith (collectively "the
Smiths").  (Id. ¶ 3).  Defendants United States Department of
Treasury, Internal Revenue Service and United States Department
of Justice  (collectively "United States") are federal agencies
with liens filed against the Smiths. (Id. ¶ 4-5).  Defendant West
Virginia Department of Tax and Revenue ("WV Tax Department") is a
state governmental department with tax liens filed against the
Smiths.  (Id. ¶ 6).  Defendant Four S Development Limited
Partnership ("Four S Development") is a West Virginia Limited
Partnership with a judgment lien filed against Ms. Smith.  (Id. ¶
7).  Defendants Louann Hedrick and Jennifer Dillon are Kanawha
County residents with judgment liens filed against Ms. Smith.
(Id. ¶ 8-9).  Defendant Poplar Hills Homeowners Association,
doing business as Poplar Estates Owners Association, Inc.,
("Poplar Hills") is a West Virginia business with its principal
office in Putnam County.  (Id. ¶ 10).

        In 1999, City National agreed to loan the Smiths

                                2

approximately $400,000 in exchange for repayment, with interest, over a fixed period of time. (Pl.'s Mem. Supp. Mot. Summ. J. 2). It was further agreed to secure the loan by a deed of trust, with certain property owned by the Smiths to serve as collateral. (Id.). According to City National, both the Smiths and the bank understood that the property to be used as collateral included Lots 2, 3, and 4 of Poplar Estates, located in Putnam County, West Virginia. (Id.; see also Pl.'s Mot. Summ. J., Ex. 2, Grafton Dep. 18).

A closing was held on July 6, 1999, wherein City National entered into a loan with the Smiths for $422,100. (Id. 2; Smith Verif. Resp. 2). Cynthia Miller, holding a valid power of attorney, signed the loan documents on behalf of the Smiths. (Compl. ¶¶ 16-17). The loan was secured by a deed of trust, which was similarly signed by Cynthia Miller on July 6, 1999. (Pl.'s Mot. Summ. J., Ex. 1, Ex. J, Deed of Trust). John A. Grafton, an attorney retained by City National, conducted the closing. (Id., Ex. 1, Grafton Aff. ¶ 3).

Attached to the deed of trust as Exhibit A was a description of the real estate securing the loan. (Id.). Exhibit A only includes a legal description of Lot 4, not Lots 2 and 3. (Pl.'s Mot. Summ. J., Ex. 1, Ex. J, Deed of Trust). City

3

National maintains that the legal description of Lots 2 and 3 was inadvertently omitted from Exhibit A.  (Pl.'s Mem. Supp. Mot. Summ. J. 5).  Lots 2 and 3 -- the property on which the Smiths' house is located -- had a total value of $158,410, whereas Lot 4 was only valued at $1,450.  (Pl.'s Mot. Summ. J., Ex. 1, Ex. A, Preliminary Title Report 2; id., Ex. B, Preliminary Title Report 3).  The deed of trust was filed and recorded with the Office of the Clerk of the County Commission of Putnam County, West Virginia in July 1999 and has not been released.  (Pl.'s Mem. Supp. Mot. Summ. J. 5).

After the loan was closed, the Smiths fell delinquent on a number of financial obligations.  (Compl. ¶ 27).  As a result, Poplar Hills obtained a judgment lien against Ms. Smith on September 28, 1999, Louann Hedrick and Jennifer Dillon each obtained judgment liens against Ms. Smith on August 31, 2004, and Four S Development obtained a judgment lien against Ms. Smith on January 28, 2005.  (Compl. ¶¶ 8-9; Pl.'s Mot. to Strike, Ex. C, Lien Index; Four S Development Resp. 3, Ex. B, Abstract of J.).  Although the amounts of the liens held by Poplar Hills, Hedrick, and Dillon have not been disclosed to the court, Four S Development's lien is in the amount of $128,304.06.  (Four S Development Resp. 3, Ex. B, Abstract of J.).  Subsequently filed

state tax liens and federal tax and judgment liens aggregate over $12.5 million.[1]  It is undisputed that none of these liens have been satisfied and that all were filed after the deed of trust was recorded.  (Compl. ¶ 29).

In 2008, following their federal convictions, the Smiths stopped making loan payments to City National.  (Pl.'s Mem. Supp. Mot. Summ. J. 6).  Mr. Smith has abandoned the house located on Lots 2 and 3.  (Id.).  Ms. Smith, however, continues to live in the house.  (Id.).

## II.  Procedural History

City National initiated this action on October 20, 2009.  Inasmuch as two of the defendants with liens on the subject property are federal government departments, jurisdiction is conferred on this court by 28 U.S.C. § 1346(f), which gives federal courts exclusive jurisdiction over actions brought under

---

[1]     The WV Tax Department filed tax liens against Mark Smith on March 2, 2005, June 26, 2006, and December 27, 2008, which collectively total $36,745.  Additionally, on January 15, 2008, the Smiths were convicted of various federal crimes, including mail fraud and willful failure to account for and pay employment taxes.  (Pl.'s Mem. Supp. Mot. Summ. J. 6).  The United States subsequently filed tax and judgment liens against the Smiths in an amount totaling $12,472,413.  (United States's Answer, Exs. 1-8).

28 U.S.C. § 2409(a), the Quiet Title Act.  The single count of the complaint is entitled, "Count One -- Reformation of Deed of Trust," and it asserts (1) that the intent of the parties to the loan was that the loan would be secured by Lots 2, 3 and 4, (2) that Lots 2 and 3 were erroneously omitted from the deed of trust, and (3) that City National and the Smiths are entitled to correct the deed of trust to accurately reflect their intentions. (See Compl. ¶¶ 30-36).  City National accordingly asks the court to enter an order reforming the deed of trust to include Lots 2 and 3.  (Id. 6).

On May 21, 2010, City National moved for judgment on the pleadings or, in the alternative, for summary judgment.  On June 3, 2010, Four S Development moved to seek additional discovery pursuant to Rule 56(f).  In denying City National's motion and granting Four S Development's motion, the court concluded as follows:

> In light of Four S Development's 56(f) affidavit [seeking additional time for discovery] and Lisa Smith's denial [that the Smiths intended to include Lots 2 and 3 as collateral], and inasmuch as the non-moving parties did not have the opportunity to conduct discovery before plaintiff moved for judgment on the pleadings or in the alternative for summary judgment, the court, while recognizing that City National presents a formidable case for relief, finds it inappropriate to attempt a ruling on the merits without affording the non-moving parties the opportunity to conduct discovery and present all of the relevant material facts.

City National v. Smith, No. 2:09-1148, slip op. at 13 (S.D. W.

6

Va. Aug. 31, 2010).

On September 20, 2010, City National moved for summary judgment.  City National contends that reformation of the deed of trust is appropriate to correct a scrivener's error, asserting that the undisputed evidence shows that the parties intended Lots 2 and 3 to serve as collateral for the loan.  (See Pl.'s Mem. Supp. Mot. Summ. J. 9-12).  Further, City National maintains that the doctrine of laches does not bar its request for reformation because the undisputed evidence shows that (1) City National's delay in asserting its rights was excusable because Grafton, its attorney at the closing, affirmatively represented to City National that he would resolve any problem with the deed of trust, and (2) City National did nothing to cause any prejudice to defendants.  (Id. 12).

On October 4, 2010, the United States filed a response to City National's summary judgment motion.  The United States says that it does not oppose City National's motion.  (United States Resp. 1).  It states that the "circumstances surrounding the loan and the documentary evidence produced by City establish conclusively that City and the Smiths intended to include Lot Nos. 2 and 3 as collateral for the loan and the omission of those Lots from the deed of trust was the result of mistake or

inadvertence."   (Id. 1-2).   The United States concludes that it

"has no equitable grounds for opposing City's request for

relief."   (Id. 2).

Also on October 4, 2010, Four S Development filed its

response in opposition to City National's motion for summary

judgment.  Four S Development contends that City National's

request for reformation is barred by the doctrine of laches

because (1) City National unreasonably delayed asserting its

rights, inasmuch as it filed this action ten years after learning

of the alleged scrivener's error, and (2) Four S Development has

been prejudiced by City National's "dilatory conduct."   (Four S

Development Resp. 4-6).

On November 1, 2010, Ms. Smith filed a verified

response to City National's summary judgment motion.  In her

verified response, Ms. Smith contends that (1) City National has

not met the requisite standard of proof for reformation, and (2)

City National's request for equitable relief is barred by the

doctrine of laches.  (Smith Verif. Resp. 4-5).

No other defendant has responded to City National's

motion for summary judgment.

III.  Motion for Summary Judgment

A.  Governing Standard


A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id.  The moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); id. at 322-23.  A party

is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant.  <u>Williams v. Griffin</u>, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  <u>Anderson</u>, 477 U.S. at 248.  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  <u>Overstreet v. Ky. Cent. Life Ins. Co.</u>, 950 F.2d 931, 937 (4th Cir. 1991).

A court must neither resolve disputed facts nor weigh the evidence, <u>Russell v. Microdyne Corp.</u>, 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility.  <u>Sosebee v. Murphy</u>, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

## B.    Applicable Substantive Law

The Quiet Title Act provides a limited waiver of the United States's sovereign immunity, and thus must be interpreted according to federal law.  28 U.S.C. § 2409(a); Amoco Prod. Co. v. United States, 619 F.2d 1383, 1387 (10th Cir. 1980).  However, "questions involving ownership, transfer and title to real estate have traditionally been resolved according to the laws of the state where the realty is located."  Rio Grande Silvery Minnow (Hybognathus amarus) v. Bureau of Reclamation, 599 F.3d 1165, 1177 (10th Cir. 2010) (quoting Amoco Prod. Co., 619 F.2d at 1387).  The court will, accordingly, apply West Virginia law to the issues relevant to the deed of trust in this action.

## C.    Laches

The court first considers defendants' contention that, regardless of whether City National is entitled to reformation, the doctrine of laches bars its request for equitable relief. "'Laches is a delay in the assertion of a known right which works to the disadvantage of another, or such delay as will warrant the presumption that the party has waived his right.'"  Warner v. Kittle, 167 W. Va. 719, 724, 280 S.E.2d 276, 280 (1981) (quoting

Harrison v. Miller, Exec., 124 W. Va. 550, 550, 21 S.E.2d 674,
675 (1942)).  Laches "is an equitable defense, and its
application depends upon the particular facts of each case."
State ex rel. West Virginia Dept. of Health and Human Resources
v. Carl Lee H., 196 W. Va. 369, 374, 472 S.E.2d 815, 820 (1996)
(citations omitted).  The defense of laches consists of two
elements: "(1) unreasonable delay and (2) prejudice."  State ex
rel. Webb v. West Virginia Bd. of Med., 204 W. Va. 234, 237, 506
S.E.2d 830, 833 (1998) (internal quotations and citations
omitted).  The court considers each of these elements in turn.

    1.   Unreasonable Delay

      The undisputed evidence shows that Grafton, the
attorney who represented City National at the closing, told City
National about the omission of Lots 2 and 3 from the deed of
trust no later than the end of 1999.  (Pl.'s Mot. Summ. J., Ex.
2, Grafton Dep. 19-20, 21-22; Smith Verif. Resp. 2).  City
National initiated this action on October 20, 2009, ten years
after it learned of the alleged scrivener's error.  This is, to
be sure, a substantial delay.

      The court notes, however, that "the reason for the

12

delay in bringing an action must be considered before applying laches." Carl Lee H., 196 W. Va. at 375, 472 S.E.2d at 821. In explaining its ten year delay before filing suit, City National asserts that it relied on Grafton's assurances that he would correct the error, and that, by his own admission, Grafton simply failed to do so. (Pl.'s Mem. Supp. Mot. Summ. J. 13). City National contends that it "had no reason to doubt Mr. Gra[f]ton's work and any representation that he would correct any errors," and that "[i]t was only many years later, when City attempted to foreclose on the property, that City realized that Lots 2 and 3 were not part of the Deed of Trust." (Id.). These assertions are substantially supported by Grafton's own testimony. (See Pl.'s Mot. Summ. J., Ex. 2, Grafton Dep. 40-41, 39, 17).

The neglect of its attorney, however, does not help City National's case. Indeed, many courts have held that attorney neglect cannot be relied upon to prevent the defense of laches because "the omissions, as well as the commissions, of an attorney are to be regarded as the acts of the client whom he represents, and his neglect is equivalent to the neglect of the client himself." Cooper v. Cooper, 144 So.2d 62, 64 (Ala. 1962) (citing 7 C.J.S. Attorney and Client § 67); see also George v. Hillman Transp. Co., 340 F. Supp. 296, 301 (W.D. Pa. 1972)

13

("faulty judgment of counsel is no defense against the charge of laches"); Landell v. Northern Pac. Ry. Co., 122 F. Supp. 253, 258 (D.D.C. 1954) ("Faulty judgment of counsel is certainly no defense against the charge of laches."); Abernathy v. Mitchell 406 So.2d 862, 865 (Ala. 1981) (citing Cooper and rejecting plaintiff's reliance on faulty attorney advice as basis for avoiding laches defense); 30A C.J.S. Equity § 163.  The West Virginia Supreme Court of Appeals apparently has had no opportunity to address this issue.  However, that court would likely follow the decisions rejecting reliance on attorney neglect as a basis for avoiding laches, inasmuch as this rule is based on well-settled principles of agency law which underlie the attorney client relationship.  The court accordingly concludes that City National's ten year delay in seeking reformation was unreasonable since City National admits the delay resulted from its own negligence, imputed to it through its attorney's apparent omissions.

### 2.    Prejudice

Although it seems that City National unreasonably delayed in filing suit, the court determines that no defendant has carried the burden of proving that City National's delay

14

caused them prejudice. Regarding the element of "prejudice," the West Virginia Supreme Court of Appeals has stated as follows:

> "[D]isadvantage may come from death of parties, loss of evidence, change of title or condition of the subject-matter, intervention of equities, or other causes. When a court of equity sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief." Syl Pt. 3, Carter v. Price, 85 W. Va. 744, 102 S.E. 685 (1920); Syl. Pt. 2, Mundy v. Arcuri, 165 W. Va. 128, 267 S.E.2d 454 (1980).

Carl Lee H., 196 W. Va. at 374, 472 S.E.2d at 820. That court has further noted that "[n]o rigid rule can be laid down as to what delay will constitute prejudice; every claim must depend upon its own circumstances." Province v. Province, 196 W. Va. 473, 484, 473 S.E.2d 894, 905 (1996).

As earlier noted, only Four S Development and Ms. Smith have responded in opposition to City National's motion for summary judgment. Four S Development contends that it has been "placed at a disadvantage by the Plaintiff's dilatory conduct." (Four S Development Resp. 6). Specifically, it maintains that after obtaining a judgment lien against Ms. Smith, the "public record informed this Defendant that its lien had priority over all other liens in that it was first in time." (Id.). Relying on its superior lien status, Four S Development claims that it "forbore its legal right" to use a "myriad of other means to enforce the judgment and collect its money" from Ms. Smith,

15

"awaiting patiently the day the property would sell."  (Id.).  It
adds that if the bank had timely filed suit to reform the deed of
trust, Four S Development would have been on notice of its own
inferior lien status and "would have availed itself to the other
means at its disposal to collect its judgment, piecemeal, at
earlier opportunities."  (Id. 6-7).  These contentions are
verified by the affidavit of Thomas Summers, Four S Development's
chief operating officer.  In Ms. Smith's verified response, she
states that "(1) there has been a delay, of 10 years in this
case, of a known right, and (2) this delay has come to the
disadvantage of the Defendant as evidenced by her present
financial condition."  (Smith Verif. Resp. 7).

        Recognizing that "the burden of proving unreasonable
delay and prejudice is upon the litigant seeking relief,"
Province, 196 W. Va. at 484 473 S.E.2d at 905, the court
concludes that defendants have failed to offer any evidence
showing that they were disadvantaged by City National's delay in
filing suit.  Four S Development claims it was harmed by the
delay because it could have availed itself of other means to
collect its judgment on earlier occasions.  (Four S Development
Resp. 6).  But the only evidence it offers in support of this
contention is Summers' affidavit, which contains nothing more

                              16

than vague and conclusory statements such as "Four-S Development

. . . decided to forebear other collection remedies and legal

rights," and "Four-S Development . . . would be irreparably

harmed and prejudiced" by a ruling in City National's favor.

(Summers' Aff. ¶¶ 7-8).[2]  While the court does not find it

necessarily unreasonable for a lienholder such as Four S

Development to rest on its lien instead of pursuing alternative,

ofttimes expensive, collection remedies,[3] Four S Development has

offered no evidence explaining what productive remedies were

available to it back in 2005 (when it obtained the lien) that are

since unavailable due to City National's delay in filing suit.

As for Ms. Smith, she states that the prejudice caused by City

National's delay is "evidenced by her present financial

condition." (Smith Verif. Resp. 7).  Yet she does not explain,

nor does the court discern, how City National's delay in filing

---

[2]    The court acknowledges that Summers' affidavit is the
subject of a motion to strike and a motion in limine by City
National.  As the above discussion demonstrates, however,
Summers' affidavit is insufficient to establish the defense of
laches.  Consequently, the court need not rule on City National's
motions.

[3]    The court recognizes that it is not uncommon for the
holder of an interest-bearing judgment or tax lien to await the
refinancing or sale someday of real estate having sufficient
value to pay off the lienholder out of the prospective loan or
sale proceeds rather than engage in costly judicial proceedings
to foreclose upon the property.  That is, however, far less
likely to be the case when the judgment lien is as great as the
$128,304 lien held by Four S Development.

17

suit in any way contributed to her current financial condition
and the near $12.5 million owing by her in federal tax and
judgment liens alone.  Because defendants have failed to make the
requisite showing of prejudice, their laches defense fails.


D.    Reformation


          City National asserts that it is entitled to the
equitable remedy of reformation because the undisputed evidence
shows that City National and Smith intended Lots 2 and 3 to be
used as collateral for the loan.  (Pl.'s Mem. Supp. Mot. Summ. J.
11-12).  It is a well-settled principle of West Virginia law that
"'[e]quity has jurisdiction to reform and correct a deed executed
through a mutual mistake of fact to conform to the actual
agreement of the parties to the deed when such mistake results
from the mistake of the scrivener in the preparation of the
deed.'"  Reed v. Toothman, 176 W. Va. 241, 242, 342 S.E.2d 207,
209 (1986) (quoting Syl. Pt. 1, Edmiston v. Wilson, 146 W. Va.
511, 120 S.E.2d 491 (1961)).  "[I]f the mistake is that of a
scrivener in preparing the deed it is regarded as being a mutual
mistake, the scrivener being the agent of both parties."  Id.
"However, before such reformation is warranted, it must be shown
that the scrivener's product reflects something other than what

18

was understood by both parties."  <u>Sams v. Goff</u>, 208 W. Va. 315, 318, 540 S.E.2d 532, 535 (1999) (citations omitted).  "The standard of proof necessary to warrant reforming a written instrument is 'strong, clear and convincing.'"  <u>Terra Firma Co. v. Morgan</u>, 223 W. Va. 329, 333, 674 S.E.2d 190, 194 (2008) (citations omitted).

        In support of its contentions that the parties intended Lots 2 and 3 to be included as collateral to the loan, and that Lots 2 and 3 were inadvertently omitted from the deed of trust due to a scrivener's error, City National offers the following documentary evidence:[4] (1) a preliminary report for Lots 2 and 3 prepared by Grafton on May 21, 1999, over a month before the July 6, 1999 closing, (Pl.'s Mot. Summ. J., Ex. 1), (2) a fax dated July 1, 1999 from Grafton to a City National representative indicating that a lien on Lot 4 would also apply to Lots 2 and 3, (<u>id.</u>, Ex. 1, Ex. C), (3) a "Uniform Residential Loan Application" prepared by Cynthia Miller on behalf of the Smiths, dated July 6, 1999, stating that the location of the subject-property was "104 Poplar Estates, Scott Depot, WV" and that the legal description of the property was "Lots 2 & 3 Poplar Estates, Putnam County," (<u>id.</u>, Ex. 4), (4) a statement submitted by Cynthia Miller on

---

        [4]    No party has disputed the authenticity of any of City National's exhibits.

behalf of the Smiths to the U.S. Department of Housing and Urban Development, dated July 6, 1999, listing the property as "104 Poplar Estates, Scotts Depot WV 25560, Lots 2 & 3 Poplar Estates," (id., Ex. 1, Ex. G), and (5) tax receipts for Lots 2 and 3 paid by Mr. Grafton, (id., Ex. 1, Ex. K).[5]

City National also cites Grafton's affidavit and deposition testimony. (Id., Ex. 1, Grafton. Aff. ¶ 24) ("It was only due to a scrivener's error that my office failed to attach the Attachment to the Deed of Trust By [the Smiths] that referenced Lot Nos. 2 and 3, but instead attached the Attachment that referenced Lot No. 4, to the Deed of Trust"); (id., Ex. 2, Grafton Dep. 19-20) ("Q: What was the attachment that was on this deed of trust as opposed to the one that should have been on the deed of trust? A: The attachment that was on it was attachment just for Lot. No. 4 of Poplar Estates. Q: Okay. A: And what should have been on it was the attachment to Lot Nos. 2 and 3 of Poplar Estates."). Grafton further testified that, after he informed Ms. Smith of his error, she "communicated to me that it would be no problem, that she would sign whatever amended

_____

[5] City National also relies on (1) two adjustable rate riders listing the subject property as "104 Poplar Estates, Scott Depot, WV," and (2) an occupancy agreement allowing Mr. and Mrs. Smith to occupy the "subject property" located at 104 Poplar Estates, Scott Depot, WV. (See Pl.'s Mot. Summ. J., Ex. 1).

documents needed to be recorded to properly reflect Lots 2 and 3 being the collateral for this loan."  (<u>Id.</u>, Ex. 2, Grafton Dep. 23-24).

Finally, City National relies on the preliminary title reports prepared for Lots 2, 3, and 4, which show that Lots 2 and 3 -- the property on which the Smiths' house is located -- had a total value of $158,410, whereas Lot 4 was only valued at $1,450. (Pl.'s Mot. Summ. J., Ex. 1, Ex. A, Preliminary Title Report 2; <u>id.</u>, Ex. B, Preliminary Title Report 3).  Based on these reports, City National contends that "[i]t goes without saying that City did not loan the Smiths in excess of $400,000 and only require that collateral worth $1,450 be listed on a deed of trust." (Pl.'s Mem. Supp. Mot. Summ. J. 5).

City National's documentary and testimonial evidence tends to show that (1) the Smiths and City National intended to include Lots 2 and 3 in the deed of trust, and (2) Lots 2 and 3 were only omitted due to Grafton's scrivener error.  In other words, City National has shown that the "the scrivener's product reflects something other than what was understood by both parties."  <u>Sams</u>, 208 W. Va. at 318, 540 S.E.2d at 535.  Further, the evidence offered by City National is, in the court's view, "strong, clear and convincing."  <u>Terra Firma</u>, 223 W. Va. at 333,

674 S.E.2d at 194.

In response to the ample evidence offered by City National, the court can find only one piece of rebuttal evidence offered by the defendants: Ms. Smith's verified statement that "[t]here was no mutual mistake by the parties in this case." (Smith Verif. Resp. 5).[6]  While the court is mindful that it must not weigh evidence in ruling on a summary judgment motion, Russell, 65 F.3d at 1239, it also recognizes that "the mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-movant]," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Given the formidable and largely undisputed evidence offered by City National, and in light of the single rebuttal statement offered by Ms. Smith, which amounts to nothing more than a scintilla of evidence, the court concludes that no reasonable juror could find in favor of Ms. Smith.  City National is therefore entitled to summary judgment.

---

[6]  Because Ms. Smith verified her response to City National's motion for summary judgment, the court will treat it as an opposing affidavit for summary judgment purposes, inasmuch as the statements therein "are based on personal knowledge." Williams, 952 F.2d at 823.

IV.  Conclusion


Based on the foregoing discussion, the court ORDERS that City National's motion for summary judgment be, and it hereby is, granted.  It is further ORDERED that the attachment referred to as Exhibit A of the deed of trust[7] shall be reformed essentially as follows: the language "Lot No. Four (4) of Poplar Estates" shall be stricken and replaced with "Lots Nos. Two (2), Three (3), and Four (4) of Poplar Estates."

It is further ORDERED that counsel for the plaintiff shall submit a copy of a proposed judgment order in accordance herewith on or before December 23, 2010.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.


DATED:  December 13, 2010

John T. Copenhaver, Jr.
United States District Judge

---

[7]     A copy of the attachment to the deed of trust is found on the docket at page 39 of Document Number 69-1.

23